KING, C.J.,
for the Court.
¶ 1. Owen D. McCormick (Owen) died on March 26, 2003. On March 29, 2008, upon leaving the funeral services for Owen, Owen’s son Eddie O. McCormick (Eddie) gave Belinda Ellzey (Belinda), Owen’s daughter, a copy of Owen’s latest will, dated 2002, and a trust created on behalf of Belinda’s son, Brandon Ellzey (Brandon). After more than three years of dispute between Eddie and Belinda as to the validity of the trust and Owen’s 2002 will, the chancellor entered a final judgment holding that the 2002 will was valid; the will contest filed in Copiah County was barred by the statute of limitations; and an accounting of the assets of the estate was not necessary because a sufficient accounting had been made. The parties were ordered to divide the assets equally as stipulated; proceeds from a checking account at Copiah Bank were to be held in trust for Brandon; gifts from Owen to his granddaughters Mollie and Carrie McCormick were to be upheld; and the money used to pay the mortgage on Eddie’s home and the proceeds from the sale of the trailer were to be returned to the estate and distributed pursuant to the provisions of the last will and testament.
¶ 2. Aggrieved, Belinda appeals and argues the following: (1) jurisdiction of Owen’s estate was proper in Harrison County; (2) the chancellor erred in ruling that the will contest was barred by the statute of limitations; (3) the chancellor’s findings and omission of substantial evidence resulted in an abuse of discretion and clear error with regard to issues of competency and undue influence; (4) the chancellor erred in holding that the trust for Brandon was stipulated to in trial court proceedings when it was not; and (5) the chancellor erred in not requiring Eddie to provide an accounting of the assets of Owen’s estate. For the reasons explained below, we affirm the judgment of the chancellor.
FACTS
¶ 3. Owen and his wife lived in Gulfport, Harrison County, Mississippi for more than fifty years until her death in 1998. After the death of his wife, Owen was cared for by his daughter Belinda, who at the time also lived in Gulfport, Mississippi, and their son Eddie, who lived in Crystal Springs, Mississippi. Approximately a year after his wife’s death, Owen, with the assistance of Belinda, drafted a will.[1]
¶ 4. On or about April 15, 2002, Owen was admitted to the hospital. Owen was subsequently admitted to the geriatric psychiatric unit of the hospital because he had episodes of paranoia, aggression, confu *586 sion, and forgetfulness. On April 22, 2002, Owen’s physicians completed statements in anticipation of a conservatorship because, in their professional opinions, Owen was neither capable of handling his own business affairs nor capable of caring for himself or making decisions in his best interest. Belinda procured a durable general power of attorney in Hai'rison County on June 22, 2002, but it was procured to make decisions regarding Owen’s personal and real property, not his health care.
¶ 5. After a two-week stay in the hospital, Owen was discharged to a nursing-home. However, with the assistance of a nursing home employee, Owen left the nursing home and returned to his home in Gulfport.
¶ 6. On October 26, 2002, Owen moved to Crystal Springs to live with Eddie and his wife, Lucy. Between October 2002 and March 2003, Owen changed the beneficiary on various accounts and annuities, closed his safe-deposit box distributing the contents to his children, sold his home in Gulfport, made substantial gifts to three of his four grandchildren, provided financial assistance to Eddie, and executed a new will.
¶ 7. On March 12, 2003, Owen was hospitalized for the fifth time within twelve months. The medical records indicated that during these periods of hospitalizations there were instances in which Owen experienced periods of confusion with very few days of lucidity. At some point between March 20, 2003, and March 23, 2003, Owen signed the trust agreement for his grandson Brandon naming Eddie as the trustee, signed documents to close a checking account at Hancock Bank in Harrison County, and finalized the sale of his home.
¶ 8. On March 26, 2003, Owen passed away. At the cemetery after the funeral services, Eddie gave Belinda a copy of Owen’s latest will and the trust on behalf of Brandon. On April 1, 2003, Belinda filed a petition in the Harrison County Chancery Court to be appointed adminis-tratix of Owen’s estate and to contest the validity of the 2002 will. Belinda was appointed as administratix on April 2, 2003. On April 29, 2003, Belinda filed a petition in the Harrison County Chancery Court as cause no. 03-00778-2 to recover assets, to set aside an invalid will, for an accounting, and for equitable relief. On May 6, 2003, Eddie filed a petition in the Copiah County Chancery Court to probate the 2002 will, which was subsequently admitted to probate.
¶ 9. On January 5, 2006, the Chancery Court of Harrison County dismissed without prejudice the pending litigation on the issue of validity of the will, which had been admitted to probate in the Copiah County Chancery Court as cause no. 2003-208. In the event that the Copiah County Chancery Court found the will to be invalid, cause no. 03-00778-2 would be reinstated and administration of the intestate estate would proceed before the Harrison County Chancery Court. Thereafter, Belinda filed a petition in the Copiah County Chancery Court to contest the 2002 will, to set aside the inter vivos gifts, to compel an accounting, and to disgorge the wrongfully acquired assets or proceeds. On January 24, 2006, Eddie filed a response in the Copiah County Chancery Court to the will contest and raised the statute of limitation as an affirmative defense. At trial, the chancellor heard testimony as to the validity of the will, evidence of Owen’s testamentary capacity, and evidence as to whether the trust that was created for Brandon was merely a checking account formerly established by Owen. On July 16, 2007, the chancellor held that the 2002 will was valid, the will contest filed in the Copiah County Chancery Court was barred by the statute of limitations, and an accounting of *587 the assets of the estate was not necessary because a sufficient accounting had been made. Feeling aggrieved, Belinda appeals.
STANDARD OF REVIEW
¶ 10. Unless the chancellor’s findings are “manifestly wrong, clearly erroneous, or an erroneous legal standard was applied,” this Court will not disturb the chancellor’s findings of fact. In re Estate of Ladner v. Ladner, 909 So.2d 1051, 1054(¶ 6) (Miss.2004).
ANALYSIS
I. WHETHER JURISDICTION OF OWEN’S ESTATE WAS PROPER IN HARRISON COUNTY.
¶ 11. On January 5, 2006, the chancellor in the Harrison County Chancery Court dismissed the case without prejudice due to the pending litigation in the Copiah County Chancery Court as to the validity of the will and ruled that venue and jurisdiction were proper in the Copiah County Chancery Court. Belinda argues that venue was proper in Harrison County because Owen had personal property in a bank in Harrison County in the form of accounts and certificate of deposits. Eddie asserts that the filing of a will for probate super-cedes a previously filed administration on the same estate; thus, Copiah County has proper jurisdiction.
¶ 12. Article 6 section 159 of the Mississippi Constitution of 1890 provides that the chancery court has full jurisdiction in matters testamentary and of administration. Johnson v. Griffin (In re Estate of Hathorne), 987 So.2d 486, 489(¶ 13) (Miss.Ct.App.2008). According to Mississippi Code Annotated section 91-7-1 (Rev.2004):
Wills shall be proved in and letters testamentary thereon granted by the chancery court of the county in which the testator had a fixed place of residence. If he had no fixed place of residence and land be devised in the will, it shall be proved in and letters granted by the chancery court of the county where the land, or some part thereof, is situated. If the testator had no fixed place of residence and personal property only be disposed of by the will, it may be proved in and letters granted by the chancery court of the county where the testator died, or of the county in which some part of the property may be.
¶ 13. A fixed place of residence is defined as where a person dwells, is domiciled, or may usually be found. Armour & Co. v. Strahan, 130 Miss. 109, 111, 93 So. 364, 365 (1922). At the time of Owen’s death, Owen was living in Crystal Springs, which is located in Copiah County. Owen had lived in Copiah County for at least five months at the time of his death. Owen had sold his home in Harrison County; therefore, there was no land to be devised in the will, only the proceeds from the sale. Owen did possess personal property in Harrison County, which was in the form of accounts and certificates of deposits.
¶ 14. At the time of his death, Owen’s fixed place of residence was in Copiah County and according to statute a will can be probated by the chancery court of the county in which the testator had a fixed place of residence. We find that jurisdiction was proper in Copiah County, and this issue is without merit.
II. WHETHER THE CHANCELLOR ERRED IN RULING THAT THE WILL CONTEST WAS TIME-BARRED BY THE STATUTE OF LIMITATIONS.
¶ 15. On appeal, Belinda asserts that the will contest was not time-barred because the issue of the validity of the will was before both the Harrison County *588 Chancery Court and the Copiah County Chancery Court. On April 1, 2003, Belinda filed a pleading in the Harrison County Chancery Court to contest the validity of the will. On May 6, 2003, the will was admitted to probate and letters testamentary were granted in the Copiah County Chancery Court. On May 12, 2003, Belinda filed a petition for special appearance to assert lack of subject matter jurisdiction in Copiah County. Belinda asserts that the courts were requested to confer with each other and determine in which court the parties should proceed. As a result, on January 5, 2006, the chancellor in the Harrison County dismissed the case in Harrison County Chancery Court without prejudice due to the pending litigation in Copiah County. Thereafter, on January 13, 2006, Belinda filed a petition in the Copiah County Chancery Court to contest the probated will dated December 4, 2002.
¶ 16. Eddie asserts that the will must be contested within two years of probate, and had Belinda not been so persistent in having the estate administered in Harris on County, then she would have filed the contest before January 2, 2006. Therefore, Eddie contends that the statute of limitations as a defense to the will contest was proper.
¶ 17. Pursuant to Mississippi Code Annotated section 91-7-23 (Rev.2004), any interested person may contest the validity of a probated will within two years by petition or bill. If the interested person does not appear within two years, the “probate shall be final and forever binding.” Estate of Schneider, 585 So.2d 1275, 1277 (Miss.1991).
¶ 18. Belinda filed the petition to contest the probated will in the Chancery Court of Copiah County more than two years after the will was admitted to probate. In response to Belinda’s pleading, on January 24, 2006, Eddie filed a response to the will contest and asserted the statute of limitation as an affirmative defense. We find that the chancellor’s ruling on July 16, 2007, which found that the will contest was time-barred, was proper.
¶ 19. We find that the pleading for special appearance to assert lack of subject matter jurisdiction, although timely filed, was not a sufficient pleading to contest the will. Moreover, the petition filed to contest the will on January 13, 2006, was not filed within the two-year statute of limitation. Therefore, we find that the will contest was time-barred. Thus, this argument is without merit.
III. WHETHER THE CHANCELLOR’S FINDINGS AND OMISSION OF SUBSTANTIAL EVIDENCE RESULTS IN AN ABUSE OF DISCRETION AND CLEAR ERROR WITH REGARD TO ISSUES OF COMPETENCY AND UNDUE INFLUENCE.
¶ 20. The chancellor ruled on July 16, 2007, that Owen possessed the requisite mental capacity when he changed the beneficiary on various accounts, made inter vivos gifts, and executed a new will. Belinda contends that Owen lacked the mental competency to carry out such actions, because he was under the undue influence of Eddie when the 2002 will and gifts were executed.
¶ 21. First, Belinda asserts that the chancellor failed to consider the two affidavits by physicians, which were obtained for the purpose of creating a conservatorship for Owen that stated that Owen was not capable of making decisions in his best interest. Second, Belinda argues that medical records, documenting Owen’s report of hallucinations in May 2002 were disregarded by the court. Third, Belinda contends that the chancellor failed to consider Brooke Ellzey’s testimony that her grandfather needed help with his personal *589 hygiene. Fourth, Belinda argues that testimony by Lucy was inconsistent with Brooke’s and Belinda’s testimony. Fifth, Belinda asserts that it is obvious from the record that Owen did assign power of attorney to her; however, allegedly Owen claimed the power of attorney to be a forgery and later had it revoked.
¶ 22. Sixth, Belinda asserts that Brooke’s testimony that her grandfather did not want to sell his house was not deemed credible by the chancellor. Seventh, Belinda asserts that the chancellor failed to give weight or credibility to the testimony of Andy Sawyer, the realtor, that he deviated from accepted real estate practice by completing disclosure papers for Owen when considering Owen’s testamentary capacity. Eighth, Belinda asserts that although she made no objections to receiving a share of the proceeds from the sale of the house, she does contend that the chancellor dismissed the importance of the circumstances surrounding the sale of the house. Next, Belinda asserts that the chancellor failed to consider Owen’s medical records as a whole, but “cherry picked” which evidence to consider.
¶ 23. Although Eddie asserts that there were discussions between the beneficiaries with regard to taking Owen to the bank before moving him to Crystal Springs, Belinda and Brooke dispute such discussions. Eddie testified that he also helped his father write letters and complete forms to change the beneficiary on his assets; however, Belinda asserts that these actions were instigated by Eddie, and not instigated on Owen’s own volition. The letter writing to Owen’s financial institutions to change the beneficiary occurred within a month of Owen moving in with Eddie.
¶ 24. Next, Belinda contends that attorneys Paul Davis, who is Eddie’s brother-in-law, and Robert Lawrence, a church member with Davis and Eddie, had no documentation to support that the exchange of information between them and Owen was accurate. Neither Lawrence nor Davis made any notes when discussing the change of the will. Moreover, neither Davis nor Lawrence knew of the physicians’ affidavits as to Owen’s decision-making abilities in April 2002, which both Davis and Lawrence assert would have been material. Belinda asserts that Eddie has yet to disperse her share of the funds even after repeated requests. In addition, Belinda argues that the chancellor ignored the notes in the medical records as to Owen’s condition during transactions occurring during his hospital admission from March 12, 2003, until his death on March 26, 2003. Belinda also asserts that when Owen moved to Crystal Springs with Eddie, Eddie promised to keep Belinda apprised of Owen’s financial dealings, but Eddie failed to do so. Moreover, Belinda argues that she did not learn of Owen’s new will and the trust, listing Eddie as the trustee, until Owen’s funeral.
¶ 25. Last, Belinda contends that in making his ruling, the chancellor failed to consider the lack of accounting regarding other assets, which include proceeds from the sale of Owen’s car, the cemetery lots owned by Owen, and Owen’s house. Belinda asserts that following Owen’s death, when she inquired as to the status of a particular asset, Eddie told her “it was none of her business.” Belinda claims that although she does not desire the inter vivos gifts to her nieces and son to be set aside, or the proceeds from the sale of Owen’s house returned, she does request an accounting of the other assets.
¶ 26. The appellate court will not interfere with the chancellor’s findings of fact, unless these facts are manifestly wrong, clearly erroneous, or an erroneous legal standard was applied. In re Estate of Ladner, 909 So.2d at 1054(¶ 6). Because *590 the chancellor is the only one to hear the testimonies of the witnesses and observe their demeanor, he is in the best position to judge their credibility. Frazier v. Shackelford (In re Estate of Carter), 912 So.2d 138, 143(¶ 18) (Miss.2005).
¶ 27. Based on our review of the record, we find that the chancellor fully considered the pleadings and evidence presented at trial before finding that Owen possessed the testamentary capacity to complete the transactions, to make the inter vivos gifts, and to execute the 2002 will. The chancellor found that, by February 2003, a confidential fiduciary relationship existed between Owen and Eddie. Therefore, the chancellor ordered Eddie to return the funds used to pay off the mortgage on Eddie’s home and the proceeds from the sale of the trailer to be returned to the estate for distribution in accordance with the will. There is nothing to suggest that the chancellor did not consider all of the evidence. We find that the chancellor did not erroneously apply the law to the facts in this case. Therefore, this issue is without merit.
IV. WHETHER THE TRIAL COURT ERRED IN HOLDING THAT THE TRUST FOR BRANDON WAS STIPULATED TO IN THE TRIAL PROCEEDINGS.
¶ 28. Belinda asserts that the record does not show that she stipulated to the proceeds in the checking account at Copiah Bank remaining in a trust (for Brandon) of any kind, especially not one controlled by Eddie. Belinda claims that the stipulation was to have the money set aside for Brandon placed in a checking account and not in a trust. Belinda argues that there never was a trust until a trust was created by Owen three days before he died; the funds now held in the trust were previously held in an account. Belinda also asserts that the money in that account has always belonged to Brandon, and her name had been previously placed on the account for tax purposes.
¶29. Although the chancellor did err in stating that the parties stipulated that the proceeds in the checking account be held in a trust for Brandon, the stipulation was immaterial to the validity of the trust. Belinda agrees that $10,533.59, which includes interest, belongs to Brandon. However, Belinda asserts that she did not agree that the money should remain in a trust of any kind, especially one being controlled by Eddie. The chancellor found that there was sufficient evidence of a valid trust agreement executed by Owen for Brandon, and the funds in the checking account held in Copiah Bank would serve as the basis for the trust created. Belinda provided no evidence to suggest that the trust was not valid. Therefore, Belinda’s assignment of error is without merit.
V. WHETHER THE CHANCELLOR ERRED IN NOT REQUIRING EDDIE TO CONDUCT AN ACCOUNTING OF THE ASSETS OF THE ESTATE.
¶ 30. Belinda asserts that the chancellor erred in ruling that no additional accounting of Owen’s assets was necessary because a sufficient accounting had already been provided. Belinda contends that Eddie had a fiduciary duty to provide an accounting of the assets. The estate had been open for five years, and there had not been any publication for creditors nor had there been any annual accounting made. Moreover, Belinda contends that the letter written by Eddie on April 28, 2003, listing all Owen’s assets and providing an explanation as to the distribution of the assets was not an adequate accounting of the assets, but it was merely a self-serving act on his part. On January 13, 2006, Belinda filed a petition in the Copiah County Chancery Court to set aside the probated will, *591 to set aside inter vivos gifts, for an accounting and for order compelling disgorgement of 'wrongfully acquired assets or the proceeds therefrom. In addition, Belinda argues that other assets such as the sale of her father’s car, the cemetery lots previously owned by Owen, and assets from Owen’s home have never been accounted for.
¶ 81. According to Mississippi Code Annotated section 91-7-277 (Rev. 2004), an accounting must be filed by the executor at least once a year, showing the disbursements and receipts of the estate. In Frazier, 912 So.2d at 144(¶ 21), the supreme court held that executors have a fiduciary duty to all interested parties to carry out all the provisions of the will that may be lawful. Among those fiduciary duties, the executor is responsible for providing an accounting of the assets. Id. at 146(¶ 26). “This accounting may be waived by the testator through the will. However, the chancery court may require an accounting even when the testator has waived it where there are charges of mismanagement or maladministration of the estate.” Id. (citations omitted).
¶ 32. Owen’s will does not require the executor to furnish a bond or an accounting to any court, file an inventory of property coming into the hands of the beneficiaries, or to report to any court with respect to the duties imposed upon the beneficiaries or with respect to the administration of the estate. The chancellor held that the accounting was sufficient, and there was no evidence of mismanagement found. Based on our review of the record, we cannot say that the chancellor erred. Owen’s will explicitly required neither an accounting of the assets nor an inventory of the property. There is no evidence of any mismanagement of the estate. We find that this issue is without merit.
¶ 33. THE JUDGMENT OF THE CHANCERY COURT OF COPIAH COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE AND MYERS, P.JJ., GRIFFIS, BARNES, ISHEE AND CARLTON, JJ., CONCUR. IRVING, J., CONCURS IN PART AND IN THE RESULT. ROBERTS, J., CONCURS IN RESULT ONLY. MAXWELL, J., NOT PARTICIPATING.

. The exact date of the execution of the 1999 will is not known, because it was destroyed upon the execution of the 2002 will.